I.M.A.G.E. and Mexican American G. I. Forum (Associations of Hispanic persons), Maria Hansen and Janie Caragajal Cavanaugh, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Benjamin F. BAILAR, United States Postmaster General, Joseph F. Morris, Regional Postmaster for the Western Region, Guido Alasia, District Manager of the United States Postal Service San Francisco District and August Simon, Manager of the United States Postal Service Oakland Sectional Center, Defendants.

No. C–76–1979 ACW.

United States District Court, N. D. California.

March 28, 1978.

---

4. *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 16 F.R.Serv.2d 1021 (N.D.Tex. 1972), aff'd on other grounds, 482 F.2d 880 (5th Cir., 1973).

Fernando Garcia, Legal Aid Society of Alameda County, Oakland, Cal., James E. Gonzales II, Legal Aid Society of Alameda County, Hayward, Cal., for plaintiffs.

John F. Barg, Asst. U. S. Atty., Civ. Div., San Francisco, Cal., for defendants.

ORDER DENYING DEFENDANTS' MO-
TIONS TO DISMISS CERTAIN DE-
FENDANTS AND CERTAIN PLAIN-
TIFFS; DENYING DEFENDANTS'
MOTION TO DISMISS CLASS ALLE-
GATIONS IN PART; AND GRANT-
ING PLAINTIFFS' MOTION FOR
CERTIFICATION OF CLASS AC-
TION IN PART

WOLLENBERG, District Judge.

Class action allegations under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, have been made concerning the San Francisco District[1] of the United States

1. There is no corresponding administrative or geographic entity within the Postal Service designated internally as the San Francisco District. The facilities so referred to in this action are the Management Sectional Centers in San Francisco, Oakland, and San Rafael (including the associated post offices under their geographic boundaries), the Bulk Mail Center located in Richmond, and the Postal Data Center in San Bruno. It is not clear exactly what facilities plaintiffs intend to include in their motion for certification. The Court presumes, based on plaintiffs' briefs, that they are interested in all facilities within what they call the San Francisco District, even though their proposed class definition is more restricted.

Postal Service (Postal Service) for discrimination in employment against Hispanics and women. This action is brought by two individual plaintiffs, Maria Hansen and Janie Caragajal Cavanaugh, and two organizational plaintiffs, I.M.A.G.E. and Mexican-American G. I. Forum (G. I. Forum).

Defendants now move to dismiss certain of the named defendants, Joseph F. Morris, Regional Postmaster for the Western Region, Guido Alasia, District Manager of the San Francisco Sectional Center and Austin Simon, Manager of the Oakland Sectional Center. They also move to dismiss the class action allegations on the grounds that the organizational plaintiffs lack standing to sue, and that Rule 23[2] requirements have not been met. Plaintiffs move pursuant to Rule 23(c)(1)[3] for a court determination that the case may be maintained as a class action. Defendants oppose such certification, or in the alternative, seek to limit the class to the two facilities of the Postal Service at which the individual plaintiffs were or are employed, the Hayward Post Office and the Postal Data Center (PDC) located in San Bruno.

The class proposed for certification by plaintiffs is that of:

All past, present, and future Hispanic and female persons employed in, or applying for employment in or deterred from applying for employment with the U. S. Postal Service in the Sectional Centers in Oakland, San Francisco, San Rafael and their respective associated offices, who have been, are being or in the future may be discriminated against on the basis of their sex or national origin with respect to hiring, assignment, compensation, promotion, transfer, training, discipline, discharge, or other terms and conditions of employment by virtue of the defendants' unlawful employment acts, practices or policies.

## I. Dismissal of certain of the defendants.

Relying on a literal interpretation of the relevant statutory provision[4] that the defendant in a Title VII civil action brought on behalf of federal employees shall be the head of the department, agency, or unit in which the alleged discrimination occurs, defendants seek dismissal of the complaint as to all parties other than Bailar, the Postmaster General of the United States. It is argued further that the inclusion of defendants lower in the chain of command is unnecessary since only the head of the agency in his official capacity can grant the relief sought by direction that appropriate action be taken by the Postal Service. Some courts have based their decisions dismissing defendants as improper parties on such a restrictive reading of Title VII. *See, e. g., Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108, 115 n. 17 (1975); *Stephenson v. Simon*, 427 F.Supp. 467, 470–71 (D.D.C.1976). However, other courts have allowed the substitution or in-

---

**2.** Plaintiffs propose that the action qualifies for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2), which provide:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

　　*　　*　　*　　*　　*　　*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole　.　　.　　.

**3.** Federal Rule of Civil Procedure 23(c)(1) provides:

[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

**4.** 42 U.S.C. § 2000e–16(c).

clusion of persons who are closer in the chain of command to the Title VII plaintiffs and who accordingly have more knowledge and actual control of actions affecting those plaintiffs. *See, e. g., Beasley v. Griffin,* 427 F.Supp. 801, 803 (D.Mass.1977); *Hunt v. Schlesinger,* 389 F.Supp. 725 (W.D. Tenn.1974). *Cf. Mosley v. United States,* 425 F.Supp. 50, 55 (N.D.Cal.1977) (dicta that the Commander of the Naval Postgraduate School, as the head of the unit employing the plaintiff, was the only proper defendant). Where, as here, responsibility for the acts complained of has not yet been determined and defendants in fact allege decentralization of decisions affecting employment, it would appear premature to dismiss as defendants those persons who may ultimately prove to be the parties best able to grant the relief sought.[5] In light of the fact that none of the named defendants are sued in their individual capacities, there seems no reason to dismiss any of them at this time.

## II. Dismissal of organizational plaintiffs.

Defendants contend that I.M.A.G.E. and G. I. Forum have not met the requirement set out in *Sierra Club v. Morton,* 405 U.S. 727, 732, [92 S.Ct. 1361, 1364, 31 L.Ed.2d 636] (1972), that an organization must show a "personal stake in the outcome of the controversy," and thus lack standing to sue either in their own capacities or on behalf of a class.[6] It is conceded that an organization may represent its members who are injured by conduct alleged in a complaint,[7] particularly if its *raison d'etre* is to represent the class. *See, e. g., Chicano Police*

*Officers Association v. Stover,* 526 F.2d 431, 10 E.P.D. ¶ 10,540 (10th Cir. 1975); *Norwalk C.O.R.E. v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968); *LULAC v. City of Santa Ana,* 11 E.P.D. ¶ 10,818 (C.D.Cal.1976); *NAACP v. Allen,* 340 F.Supp. 703, 705 (M.D.Ala.1972), *aff'd,* 493 F.2d 614 (5th Cir. 1974). The Supreme Court has held that it is sufficient to establish standing if an organization seeks to protect an interest of its own arguably within the zone of interests to be protected or regulated by the applicable statute or constitutional guarantee. *United States v. SCRAP,* 412 U.S. 669, 686–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). *See also Senter v. General Motors Corp.,* 532 F.2d 511, 517–18 (6th Cir. 1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

I.M.A.G.E. plainly meets either criteria. It alleges injury to its members, including the individual plaintiffs, as a result of defendants' discriminatory employment practices and policies. Its Articles of Incorporation include an organizational history that states that it was established by a group of Mexican-American federal employees as an organization concerned with employment opportunities in the government for individuals with Spanish surnames. The organization now states that it has since expanded to include other Hispanic origin groups and presently has as one of its objectives the encouragement of the promotion and advancement of Hispanic government employees.

G. I. Forum alleges that it has Mexican-American and Hispanic members who have

---

**5.** For example, plaintiff Hansen seeks reinstatement in a position which falls within the scope of authority of the Postmaster of the Hayward Post Office. Defendant Simon, as manager of that office, may prove to be more easily able than the head of the Postal Service in Washington, D. C., to order such relief.

**6.** The organizational plaintiffs do allege personal injury to themselves, consisting of loss of prestige and credibility. While some courts have given weight to factors affecting membership and effectiveness, there is no authority for relying solely on such allegations to support a finding of standing on the part of an organiza-

tion. *But cf. Chicano Police Officers Association v. Stover,* 526 F.2d 431, 10 E.P.D. ' 10,540 (10th Cir. 1975) where it is said that:

The Association therefore has a direct stake, independent of its members' rights under the Civil Rights Act, in challenging barriers against employment of those from whom it might well enhance its membership and resources to attain its goals.

**7.** Questions as to the adequacy of representation for the proposed class are discussed separately below.

been, are being and will be aggrieved by the Postal Service policies and practices which discriminate on the basis of national origin and sex.[8] Its charter indicates a membership consisting predominantly of Hispanic male veterans and nowhere explicitly mentions involvement in employment discrimination as one of its objectives or purposes. However, it alleges that one of the civic purposes for which it was organized is the promotion of equal employment opportunities for Mexican-American persons. This contention is supported by its recent history of organizational advocacy of equal employment opportunities.[9]

For the foregoing reasons, the organizational plaintiffs in this action cannot be said to lack standing to sue.

### III. Requirements of Rule 23.

■ Plaintiffs contend that they meet all the requirements of Rule 23(a) and of Rule 23(b)(2), thus qualifying for class certification. Plaintiffs urge that Rule 23 be liberally applied so as to allow plaintiffs to assert "across the board" claims of systemic discrimination within the Postal Service in the San Francisco District.[10] Defendants argue that the class which plaintiffs seek to represent should be narrowly limited to those having a close congruence in terms of the commonality and typicality required by Rule 23(a)(2) and 23(a)(3).

There is no consensus even in this Circuit as to which approach is preferable, or as to whether there might be some middle-ground position to be uniformly applied. Courts favoring allowing across the board attacks on employment practices point to the policy of Title VII, *i. e.*, the elimination of employment discrimination, to the need for judicial efficiency and economy, and to the fact that race and sex discrimination are by definition discrimination against classes of individuals. They assert that overly-technical limitation of classes by the district courts will drain the life out of Title VII and will unduly narrow the scope of

**8.** No factual showing has been made of injury to specific members of G. I. Forum, but it must be kept in view that a Rule 23(c)(1) determination should not be treated as a preliminary hearing on the merits of a complaint. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1973); *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 37 (N.D.Cal.1977). If the allegations of system-wide discrimination against Hispanics by the Postal Service are accepted as true, injury to at least some of G. I. Forum's Hispanic members, which include Postal Service employees, can be inferred.

**9.** This includes promoting community action, bringing administrative complaints and joining in Title VII actions. G. I. Forum lodged third-party administrative complaints against the Postal Service prior to its participation in the present case on behalf of itself and all Hispanic persons. I.M.A.G.E. joined with G. I. Forum in lodging these complaints. They have also been organizational plaintiffs in other employment discrimination actions, *see, e. g., Officers for Justice v. Civil Service Commission of City & Co. of San Francisco*, 371 F.Supp. 1328 (N.D. Cal.1973), *Western Addition Community Organization v. Alioto*, 330 F.Supp. 536 (N.D.Cal. 1971), including Title VII actions alleging sex discrimination. *See NOW v. Bank of California*, 6 FEP Cases 27 (N.D.Cal.1973) (organizational plaintiffs dismissed under the authority of *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).

**10.** Statistics forwarded by plaintiffs indicate that there may be a significant disparity between the available labor pool of Hispanics and women and their representation in the Sectional Centers, particularly at the upper wage and salary scales. For example, the July 1977 employment statistics for the Sectional Centers involved indicate that there are 16,719 persons employed in the relevant facilities, yet only 773 or 4.6% are Hispanic. By contrast, plaintiffs' statistics state that the labor pool of the Bay Area is 10.7% Hispanic. It also appears that only 6.0% of the persons hired between October, 1975, and April, 1977, were Hispanic, and only 4.8% of the exempt positions category, including postmasters and supervisors, were filled by Hispanic persons. Evidently only 3.3% of the Postal Executive Schedule, the highest schedule, is comprised of Hispanics.

Women, according to plaintiffs' statistics, constitute 39.4% of the available Bay Area work force, and yet comprise only 9.1% of the top management, professional, and technical positions represented by the highest Postal Service wage/salary schedule, the Postal Executive Schedule. Evidently no women were hired into the exempt positions category, including postmasters and supervisors, for the period October, 1975, to April, 1977.

relief possible once liability is found. *See, e. g., Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 339–41 (10th Cir. 1975); *Johnson v. Georgia Highway Express*, 417 F.2d 1122, 1124 (5th Cir. 1969); *Ellis v. Naval Air Rework Facility, Alameda, Calif.*, 404 F.Supp. 391, 396 (N.D.Cal.1975).

Those courts opposed to this approach argue that the requirements of Rule 23 should not be relaxed simply because employment discrimination is involved and that these requisites to the maintenance of a class action are particularly necessary to protect the interests of absent members who will be bound by the judgment. *See, e. g., Johnson v. Georgia Highway Express*, 417 F.2d at 1126 (concurring opinion); *Harriss v. Pan American World Airways*, 74 F.R.D. 24, 43–44 (N.D.Cal.1977); *Lightfoot v. Gallo Sales Co.*, 15 FEP Cases 615, 619 (N.D.Cal.1977).

The reasoning of proponents of a liberal view of class certification in Title VII actions seems more persuasive in light of the fact that there are other methods available to control the course of the litigation that are preferable to a possibly premature and overly restrictive definition of the class. But this is not to say that thorough attention need not be given to the requirements of Rule 23, particularly to Rule 23(a)(4)'s mandate of fair and adequate representation, and to Rule 23(a)(3)'s implicit requirement that representative parties have an interest similar to the class certified by virtue of holding membership in the class and having suffered an injury common to the class. *See, e. g., Senter v. General Motors Corp.*, 532 F.2d at 518.

A. Rule 23(a)(2): Common Questions of Law or Fact.

█ An employment discrimination case under Title VII is paradigmatic of a class action. Courts have typically accepted the view that common issues of law and fact are inherent in a challenge to discriminatory practices and policies which threaten an entire class. *See, e. g., Gibson v. Local 40, Supercargoes & Checkers, Etc.*, 543 F.2d 1259, 1266 (9th Cir. 1976). Plaintiffs in the present case have offered evidence that systemic discrimination exists in the Sectional Centers of the San Francisco District[11] and that it is due to some extent to nationwide practices and policies within the Postal Service.[12] This is sufficient to meet the requirements of Rule 23(a)(2).

B. Rule 23(a)(3): Typicality.

█ Defendants argue strenuously that the proposed class is too heterogeneous to meet the test of typicality of claims or defenses between those of the representative parties and those of the class. The principal grounds for their argument are that conditions of employment are unique as to each of the physical facilities included within the proposed class, due to autonomous local administration and implementation of personnel policies and decisions and that they are unique as to each category of employees within the San Francisco District, depending on whether they are covered by a collective bargaining agreement and, if so, in which of four separate collective bargaining units they come. It is also contended that the individual plaintiffs are not members of the class they seek to represent, having individualized claims of discrimination.

Responding to this latter contention first, it is evident that an allegation of discrimination directed against a party, which must manifest itself in a particularized fashion, is sufficient to meet the requirement of typicality if it is due to a common policy of unequal treatment directed at the purported class on the basis of race or sex. *See*

---

**11.** *See* note 10 *supra.*

**12.** Personnel manuals, tests, and standards for promotion and employment are developed on a national basis, including procedures for determining whether a person passes such tests. Affidavit of Thomas E. Leavey, General Manager, Employment and Placement Division, Employee Relations Department, U.S. Postal Service, Washington, D.C., exhibit to Defendants' Motion to Dismiss Class Action Allegations, and to Dismiss Certain Plaintiffs and Defendants, filed September 16, 1977.

*Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d at 1332–33; *Senter v. General Motors Corp.*, 532 F.2d at 524; *Rich v. Martin Marietta Corp.*, 522 F.2d at 339–41, 349; *Barnett v. W. T. Grant*, 518 F.2d 543, 548–50 (4th Cir. 1975). *But see Gibson v. Local 40, Supercargoes & Checkers, Etc.*, 543 F.2d at 1264–65; *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Sandoval v. Moore Business Forms*, 74 F.R.D. 24, 54–56 (N.D.Cal.1977) (case consolidated with *Harriss, supra*). The promulgation of standards and tests for hiring and promotion by the Postal Service at the national level and the showing made alleging disparity in employment and promotion between the class of Hispanics and women in the Sectional Centers and in the alleged relevant labor force refute the argument that the claims of the representatives are not typical of the class.

It appears that the Sectional and Bulk Mail Centers do not have such autonomous local administration and personnel policies and practices as to defeat the typicality requirement, because of the national standards and tests, and the statistical showing as already discussed. This claim has more validity in regard to the Postal Data Center, which apparently was not included in the statistics gathered to date and which has a unique position within the geographic area of the proposed class in that it is not functionally or administratively connected with the regional centers. The only evidence of discrimination in the PDC is provided by the claims raised by Cavanaugh of discrimination in application of the terms of the collective bargaining agreement concerning annual leave, reassignment, and treatment by her superiors. These claims raise issues which may not be typical of practices in the PDC facility.[13] In view of the absence of corroborating evidence allowing an inference that class-wide discrimination exists at the PDC, that facility must be excluded from the class. Plaintiff Cavanaugh is therefore prevented from being a representative of the class that remains.

The differences in employment conditions in the Sectional and Bulk Mail Centers of the San Francisco District due to the existence and type of union representation are mitigated by two factors. The first is that most of the employees are engaged in the same type of work: the sorting, distributing and collecting of mail. The second is that although there are four different bargaining agents, there is only one national collective bargaining agreement covering those employees. It should also be noted that a remedy under Title VII for employment discrimination is independent of any remedy afforded by a collective bargaining agreement, so that differences in grievance procedures cannot be considered conclusive on the issue of typicality. In addition, the same salary/wage schedules apply to all Postal Service employees.[14]

**13.** The fact that the PDC is subject to the national standards and tests referred to in note 12, *supra*, is insufficient, standing alone, to warrant inclusion of the PDC in a class action where the evidence of class-wide discrimination applies to the Sectional Centers and not to the PDC. The PDC seems quite different than the Centers. The employees in the PDC are covered by their own national collective bargaining agreement and are represented by an agent different from those representing the employees of the Centers. Their work also seems to be of a different type, consisting of primarily technical rather than craft employment.

**14.** Affidavit of Warren E. Brown, General Manager, Compensation Division, Western Region, U.S. Postal Service, Exhibit B to Defendants' Opposition to Motion for Class Action Certification and Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss, filed November 8, 1977. Brown states that there are six primary salary/wage schedules applicable within the Postal Service. The first is the Postal Executive Schedule, covering employees who are primarily the top management, professional, and technical positions. (It is this category, applicable to grades 17–42, which is alleged by plaintiffs to indicate discrimination in promotion and hiring by virtue of the meager representation of women and minorities. *See* note 10 *supra*). The second basic salary schedule is the Postal Management Schedule, essentially covering first line and second line supervisory personnel. The third is the Postal Technical, Administrative and Support Schedule, which covers essentially non-bargaining unit/non-supervisory positions. The fourth schedule is the

█ A further problem is whether the named plaintiffs may challenge the broad range of discriminatory practices that are included in the putative class description, i. e., "hiring, assignment, compensation, promotion, transfer, training, discipline, discharge, or other terms and conditions of employment." The sole remaining individual plaintiff's claim may be indicative of class-wide race and sex discrimination relating to transfer, assignment, and reassignment. The statistics collated to date and the existence of certain personnel practices within the Postal Service support allegations of class-wide discrimination in regard to hiring and promotion. Compensation is clearly closely tied to promotion, and other specified practices, as is training. But plaintiffs have offered no evidence of discriminatory discipline, discharge, or other terms and conditions of employment in the San Francisco District. Therefore, while plaintiffs are entitled to class-wide discovery in order to perhaps develop such evidence, the terms "discipline, discharge, or other terms and conditions of employment" will be stricken from the definition of the action certified.

## C. Rule 23(a)(4): Adequacy of Representation.

█ To determine whether the representative plaintiffs can fairly and adequately protect the interests of the proposed class, two factors must be considered: first, the competency and diligence of plaintiffs' counsel; and second, whether the action is a collusive suit or there are antagonistic or conflicting claims.

Despite the lack of timeliness in moving for class certification and in showing that it is merited, the competence of counsel is not seriously questioned. Counsel alleges, evidently in good faith, that the delay is due in large measure to the recalcitrance of counsel for the defendants in responding to requests for discovery. The attorneys for the representative plaintiffs work for legal aid organizations which appear to have had a substantial amount of experience in Title VII litigation, including class actions.

█ A possible conflict is presented by plaintiffs' attempt to pursue claims of both sex discrimination and race discrimination. The question of whether there is an inherent conflict between these claims has been addressed by other courts. In *Martinez v. Bechtel Corp.*, 11 FEP Cases 899 (N.D.Cal. 1975), the court refused to certify a class of Filipinos and women which a Filipino female sought to represent, asserting that the plaintiff "would not wish to press the claims of men, of any race, to the disadvantage of the women she proposes to represent." *Id.* at 6355. The court felt that the creation of subclasses "would not cure the possibility that the interests of Filipino men might conflict substantially with the class relief which plaintiff seeks for women." *Id.* at 6355. The court thus excluded male Filipinos from the class.

Other courts, however, have certified classes where one minority group represented other protected groups, where common claims of race discrimination were raised. *See, e. g., Norwalk C.O.R.E. v. Norwalk Redevelopment Agency*, 395 F.2d 920 (2d Cir. 1968). Similarly, courts have allowed Title VII class actions based on allegations of race and sex discrimination. *See, e. g., Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975); *NOW v. Bank of California*, 6 FEP Cases 27 (N.D.Cal.1973) (the class could be subdivided into one group of minorities represented by a black and one of all women represented by a white female).

---

Postal Schedule, applicable to essentially all bargaining unit positions, excluding the Rural Carrier Craft, a bargaining unit position covered by the fifth basic schedule, the Rural Carrier Schedule. The sixth salary schedule is the Non-City Delivery Schedule, covering positions primarily of postmasters of non-city delivery post offices, which are offices without city delivery service. The significant breakdown in terms of typicality would seem to be these position categories, and not whether the position is covered by a collective bargaining agreement.

558

The exclusion of non-Hispanic women from the class, or the separation of the proposed class into subclasses for the discovery and liability phases, seems unnecessary and ill-advised. The individual plaintiff and the organizational plaintiffs are able to represent both Hispanics and women. No actual conflict is present at this stage, and should one appear to be present at the remedial stage of the action, should it proceed that far, the class can be subdivided and separate counsel can be brought in at that point. Therefore, the liability and the remedial phases of the trial should be bifurcated.

Unlike the situation found by the court in *Martinez*, the individual plaintiff does not appear primarily concerned with pressing her claims of sex discrimination. Her membership in I.M.A.G.E. and the inclusion of allegations of national origin discrimination in her claims attests to the congruence of her interests with that of Hispanics in eliminating the effects of employment discrimination. Nor does the individual plaintiff appear concerned only with the betterment of conditions for Hispanic women, and not other female employees. She appears to recognize that a significant reason for the discrimination she feels she has suffered may be due to her sex as she has pursued the sex discrimination aspects of this suit vigorously thus far.

The organizational plaintiffs seem especially desirable representatives as institutional advocates of equal employment opportunities. It may even be said that an organization may be preferable to a private party to press for changes in employment policies, since it has no individual claim which it can be induced to settle to the detriment of the class claims, and perhaps lesser economic pressures which preclude involvement in long-term litigation. The Court is concerned about the ability of the organizational plaintiffs to represent non-Hispanic women since the stated goals of the organizations is the betterment of the status of Hispanics.[15] But these organizations have shown a willingness to further the interests of minorities and women in administrative and judicial proceedings.[16] As the Court does not perceive any conflict between the interests of Hispanics and others at this stage of the litigation, and since the organizational plaintiffs have pursued vigorously thus far the claims on behalf of non-Hispanic women, the organizational plaintiffs are found to be fair and adequate representatives of the entire class at this point in the proceedings.

D. Rule 23(a)(1): Numerosity.

The requirement of numerosity is met by virtue of the fact that joinder would be impracticable for the contemplated class. There are presently more than 750 Hispanic employees and almost 5,000 female employees in the geographic area which is the subject of this suit. A class consisting of those discriminated against in the past and those who will benefit by the injunctive relief sought for future violations clearly meets the requirement of numerosity.

E. Rule 23(b)(2).

The plaintiffs seek injunctive relief against the across the board practices and policies that discriminate against the proposed class. This relief with respect to the class as a whole would be most appropriate should the allegations of sex and national origin discrimination prove to be well-founded. Thus, the final requirement of Rule 23 is met. *See, e. g., Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d at 250-51.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Defendants' motion to dismiss Morris, Alasia and Simon as defendants in this action is DENIED.

2. Defendants' motion to dismiss I.M.A.G.E. and the Mexican-American G. I. Forum as plaintiffs is DENIED.

3. Defendants' motion to dismiss class action allegations contained in the complaint is DENIED.

15. See text at pp. 553-554.

16. *See* note 9 *supra.*

4. Pursuant to Rule 23(c)(1), this action may be maintained as a class action under Rule 23(b)(2) on behalf of the class of plaintiffs defined as follows:

All past, present, and future Hispanic and female persons employed in, or applying for employment in or deterred from applying for employment with the U.S. Postal Service in the Sectional Centers in Oakland, San Francisco, San Rafael, and their respective associated offices, and with the Bulk Mail Center in Richmond, who have been, are being, or in the future may be discriminated against on the basis of their sex or Hispanic national origin with respect to hiring, assignment, compensation; promotion, transfer, and training by virtue of the defendants' unlawful employment acts, practices, or policies.

5. This class is entitled to assert all claims which are consistent with this order.

6. Plaintiff Cavanaugh is entitled to assert only her individual claims, and not claims on behalf of the certified class.

7. Notice to members of the class is not necessary at this time.

8. Pursuant to Rule 23(c)(4)(A), this action shall be bifurcated into two trials: one to determine liability and the second, if necessary, to determine the appropriate relief.

9. This ruling on maintenance of the class is provisional and is subject to modification at any time prior to a decision on the merits.