Judy A. HUTCHESON, et al.

v.

TENNESSEE VALLEY AUTHORITY, et al.

No. 3–84–0201.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 7, 1985.

Joseph E. Finley, Baltimore, Md., and George E. Barrett, Linda A. Ross, Barrett & Ray, Nashville, Tenn., for plaintiffs.

Herbert S. Sanger, General Counsel, Tennessee Valley Authority, Justin M. Schwamm, Sr., Asst. General Counsel, Thomas F. Fine, A. Jackson Woodall, Knoxville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

### Introduction

The case before this Court is one alleging sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (1976). The case is brought by four female individuals and their union, the Office and Professional Employees International Union [OPEIU] against the Tennessee Valley Authority [TVA].[1] The instant motion before the Court is one by the defendants requesting dismissal or in the alternative summary

1. Pending before the Court is a motion for determination that the instant case is maintaina-

judgment. The defendants raise several grounds which they believe are sufficient to warrant dismissal/summary judgment. First, the defendants allege that the union plaintiff, the OPEIU, as well as the named defendant, TVA, are improper parties. Second, the defendants maintain that dismissal is appropriate because of the plaintiff's failure to join a panel of union representatives as parties to the lawsuit under Rule 19, Fed.R.Civ.P. Finally, the defendants assert that principles of res judicata and/or collateral estoppel apply to this case, thus barring litigation of the plaintiffs' claims. The Court is unpersuaded by the arguments presented by the defendants and accordingly denies their motion to dismiss or in the alternative motion for summary judgment.

### Facts

In negotiating employment contracts TVA deals with an entity known as the Salary Policy Employee Panel [Panel] which consists of representative members of five unions each of which represent a certain segment of TVA's employees. TVA and the Panel negotiated and signed an employment contract in 1981 [the 1981 Agreement]. The union plaintiff, OPEIU, signed the 1981 Agreement on behalf of its members. The OPEIU represents employees, the overwhelming majority of which are women, which are paid according to the "SB" salary schedule. The SB schedule is one of several salary schedules contained in the 1981 Agreement. Each schedule has gradations which depend upon variable factors such as experience, meritorious advancement, etc. The actual numbers that are "plugged" into the various salary schedules are determined by an annual salary/benefit survey conducted by TVA of private sector area employers. The survey purports to establish what the "going rate" is for a certain type of job. For example, a clerical employee working for TVA would be paid that which the salary/benefit survey indicated a private sector clerical em-

ble as a class action.

ployee of similar experience would be paid in the area. The gravamen of the complaint focuses on alleged sex discrimination resulting from changes in the private sector employers surveyed in the 1981 salary/benefit survey. The plaintiffs allege that the ultimate and intended effect of the change in the survey was to allow increases in the salary of predominantly male employee groups and at the same time to allow no increases, and in some cases reductions in the salaries of predominantly female employee groups.

In response to the allegedly discriminatory effect of the changes in the 1981 salary/benefit survey, plaintiff Judy A. Hutcheson filed an Equal Employment Opportunity class action complaint with TVA. The EEOC recommended certification of the class and acceptance of the complaint for action, yet in early 1983, TVA's Director of Equal Opportunity Compliance rejected the complaint. Plaintiff Hutcheson appealed to the EEOC which failed to act within the statutorily allotted 180 days. Hutcheson then filed this lawsuit in this Court pursuant to 42 U.S.C. § 2000e–16.

### Improper Parties

The Court first will address the defendants' claim that two of the parties, namely TVA and OPEIU, are improper and thus should be dismissed. Both sides of this conflict agree that TVA should be excused as a named defendant and will be replaced by the individual members of TVA's Board of Directors. *See* 16 U.S.C. § 831(a)(a) & (g) (1982). Dispute exists, however, as to whether the OPEIU is a proper plaintiff. The defendants maintain that since the instant suit is jurisdictionally based on 42 U.S.C. § 2000e–16, only those parties that fulfill the precise wording of that statute may be proper plaintiffs. The language of section 2000e–16(c) limits Title VII actions against the federal government to "aggrieved employees or aggrieved applicants for employment." The defendants state that a union is not literally "an employee or applicant for employment" and cite to a Supreme Court case, *Brown v. GSA*, 425

U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), as justification for literally and narrowly construing the statutory language of 42 U.S.C. § 2000e–16(c). The *Brown v. GSA* case holds that the sole avenue of relief against the federal government for discrimination is under 42 U.S.C. § 2000e–16. *Id.* In *Brown v. GSA*, the Court does recommend restraint in interpreting section 2000e–16. The defendants also rely upon two cases arising from the District Court for the District of Columbia which dealt with the propriety of naming an employee union as a plaintiff to a discrimination suit filed under 42 U.S.C. § 2000e–16. In *Palmer v. Kissinger*, 13 EPD ¶ 11,419 (D.D.C.1976), the court interpreted the *Brown v. GSA* decision as requiring strict compliance with the wording of section 2000e–16(c), and thus the court disallowed all organizational plaintiffs (union, etc.) because they were not "employees or applicants for employment." *Id.* ¶ 11,-419 at 6408. The defendants also cite the case of *D.C. Charter Chapter Federally Employed Women v. McCormick*, 13 EPD ¶ 11,470 (D.D.C.1976) to support their contention that a union representing federal employees cannot be a plaintiff in a suit filed under 42 U.S.C. § 2000e–16. Upon review of this case, the Court believes that the defendants have mischaracterized the impact of the *McCormick* case. In *McCormick* the court dismissed the claims of discrimination filed by a federal employee union not because the plaintiff in the action was a union, but rather because the plaintiff failed to plead under 42 U.S.C. § 2000e–16 which under the *Brown v. GSA* decision is the exclusive means of relief for federal employee discrimination claims. The *McCormick* court expressly reserved opinion as to "whether or not the organizational plaintiff would have been authorized to bring this action under 42 U.S.C. § 2000e–16...." *McCormick*, 13 EPD ¶ 11,470 at 6637. Nonetheless, the defendants assert that under *Brown v. GSA*, 42 U.S.C. § 2000e–16 is to be strictly construed so as to preclude all but literal "employees and applicants for employment" from bringing a discrimination suit against

a federal government employer. *See Miller v. Smith*, 584 F.Supp. 149, 153 n. 4 (D.D.C.1984).

The plaintiffs assert that the *Brown v. GSA* case does not establish formalistic, inflexible rules of construing "employees and applicants for employment". Rather, the plaintiffs assert that while *Brown v. GSA* does limit the remedy for discrimination cases between federal employees and their employers, (i.e., such cases must be brought exclusively under 42 U.S.C. § 2000e–16), the case does not limit the party-plaintiffs literally to "employees and applicants for employment." Based on their reading of *Brown v. GSA*, the plaintiffs maintain that the decision in no way bars a union's participation in a discrimination suit on behalf of its members who otherwise meet the jurisdictional requirement for bringing suit (i.e., are employees or applicants for employment). In support of their stance the plaintiffs cite to the case of *NAACP v. United States Postal Service*, 22 FEP Cases 502 (N.D.Ga.1977), in which the NAACP and a local federal employee union brought suit against the Atlanta Post Office alleging both race and sex discrimination. The court focused mainly on the issue of administrative exhaustion of remedies but did state that the union, and not the NAACP, was properly before the court as a plaintiff. *Id.* The plaintiffs also rely upon the case of *IMAGE v. Bailar*, 78 F.R.D. 549 (N.D.Cal. 1978), a case in which two organizational plaintiffs, IMAGE and the Mexican-American G.I. Forum, joined with two allegedly aggrieved parties to sue the San Francisco branch of the Post Office under 42 U.S.C. § 2000e–16. The defendants in *Bailar* moved to dismiss the organizational plain-

tiffs for lack of proper standing. In denying the defendants' motion the district court did not address directly whether the language "employee or applicant for employment," was to be literally interpreted so as to bar union plaintiffs.[2] But since the claim in *Bailar* was based upon 42 U.S.C. § 2000e–16, the district court must have considered the organizational plaintiffs proper both in regard to jurisdiction and standing.

The plaintiffs also rely on cases which establish that unions are proper as plaintiffs in discrimination claims between private sector employees and their employers. *See, e.g., Social Services Union, Local 535 v. City of Santa Clara*, 609 F.2d 944, 946 & n. 3 (9th Cir.1979); *International Union of Electrical, Radio and Machine Workers v. Westinghouse*, 73 F.R.D. 57, 58–59 (W.D.N.Y.1976). Furthermore, the plaintiffs maintain that as a matter of sound public policy, unions should be allowed to proceed as plaintiffs in discrimination cases involving their members. The employee often is unable to proceed against his employer due to lack of resources. A union can provide the financial backing and legal expertise needed for proper vindication of its members' Title VII claims. *International Woodworkers v. Georgia-Pacific Corp.*, 568 F.2d 64, 67 (8th Cir.1977); *see International Woodworkers v. Chesapeake Plywood*, 659 F.2d 1259 (4th Cir. 1981). Thus, the plaintiffs assert that OPEIU should be allowed as a plaintiff in an action under 42 U.S.C. § 2000e–16.

■ The Court, having reviewed the arguments, finds OPEIU to be a proper plaintiff in the present suit.[3] The Court finds

---

**2.** Note, however, that the court in *Bailar* did reject a literal reading of a provision in 42 U.S.C. § 2000e–16(c) which required that Title VII claims by federal employees must be brought against the agency head. The court held that this did not require the actual agency head be the only defendant; others in the agency could be proper defendants as well. *Bailar*, 78 F.R.D. at 552–53. The fact that a flexible interpretation of "agency head" has appeared in a case undermines the defendants' position that the *Brown v. GSA* case requires a literal compli-

ance with 42 U.S.C. § 2000e–16 and opens the door for the flexible interpretation of "employee or applicant for employment."

**3.** The defendants also allege that the OPEIU has not exhausted the available remedies because of the union's absence in plaintiff Hutcheson's attempt to gain relief through the TVA grievance procedures. This has been held as being inadequate to bar participation in future litigation in federal court. *See Grogg v. General Motors Corp.*, 72 F.R.D. 523, 533 (S.D.N.Y.1976).

that the Supreme Court case, *Brown v. GSA,* limits the remedy for discrimination of federal employees to actions under 42 U.S.C. 2000e–16, but does not limit the proper plaintiffs to flesh and blood "employees or applicants for employment." Cases that do address whether federal employee unions may be plaintiffs in a section 2000e–16 suit do not provide a uniform answer. *Compare Palmer v. Kissinger,* 13 EPD ¶ 11,419 *with IMAGE v. Bailar,* 78 F.R.D. 549. Some cases freely state that the issue is an open one. *McCormick,* 13 EPD ¶ 11,470. And while *Brown v. GSA* may be read as advising strict interpretation of the language of section 2000e–16, an inflexible construction of that section barring unions from becoming party plaintiffs could result in the denial to the federal employee of the support needed to effectively present his/her discrimination claim. Finally, the Court, recognizing that private sector unions are allowed to become plaintiffs in Title VII cases, sees no convincing reason why the unions representing federal employees should be treated differently. *See Brown v. GSA,* 425 U.S. at 838, 96 S.Ct. at 1970, 48 L.Ed.2d at 414–15 (Stevens, J., dissenting). To this Court, sex discrimination is sex discrimination whether the culprit be a private employer or a federal government agency. The OPEIU, in its capacity as representative of the SB salary level employees, is a proper party to seek vindication of its members rights and eradication of the allegedly discriminatory practices affecting its members. *See IUE v. Westinghouse,* 73 F.R.D. 57 at 58–59 (W.D.N.Y.1976).

### Rule 19 Joinder

■ Defendants' next contention is that the Court should dismiss the instant complaint under Rule 12(b)(7), Fed.R.Civ.P. because of the plaintiffs' failure to join the Panel as a party under Rule 19(a), Fed.R. Civ.P. Rule 19(a) provides for mandatory joinder of certain parties. The rule states:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Rule 19(a), Fed.R.Civ.P. Rule 19(a) establishes various factors courts are to consider when deciding whether a person must be joined. The rule contemplates that if the joinder does not present jurisdictional or service of process problems, the person "shall be joined as an additional party if the person either has an interest in the action which should be protected or is a party without whose presence complete relief cannot be afforded to those who are already parties to the action." *Wright Farms Construction, Inc. v. Kreps,* 444 F.Supp. 1023, 1028 (D.Vt.1977) (citing 3A Moore's Federal Practice ¶ 19.07–1[3], at 2254–55 (2d ed. 1977)). Aside from the concerns enumerated in the language of Rule 19, courts also should consider the "practical considerations" of joining the person in question.[4] *Provident Bank and Trust Co. v. Patterson,* 390 U.S. 102, 117, n. 12, 88 S.Ct. 733, 742 n. 12, 19 L.Ed.2d 936, 949 n. 12 (1968); *Smith v. United Brotherhood of Carpenters, etc.,* 685 F.2d 164, 166 (6th Cir.1982); *Lynch v. Sperry*

---

4. The defendants assert that the "practical considerations" spoken of in the *Provident Bank & Trust* case apply only to determination of permissive joinder under Rule 19(b), and thus is not applicable to the analysis of Rule 19(a). This Court's reading of footnote 12 in *Provident*

*Bank & Trust* leads it to believe that the Supreme Court was saying that determinations under Rule 19—not 19(a) or 19(b)—require a court to consider "practical considerations" of joinder—as well as the precise formula provided by the language of Rule 19.

*Rand Corporation,* 62 FRD 78, 86 (S.D.N. Y.1973).

■ The defendants maintain that the Panel has an obvious interest in the instant lawsuit first because the Panel negotiated and signed the 1981 Agreement with TVA and it is the wage rates contained in the appendix of the 1981 Agreement that the plaintiffs challenge as being discriminatory. Second, the defendants contend that the interests of the Panel diverge from those of the plaintiffs because allowing the plaintiffs their requested relief—the alteration of the wage rates and the salary/benefit survey—would necessarily impact (presumably in negative manner) upon the wage rates applicable to those non-SB schedule employees represented by the Panel. Finally, the defendants claim that the Panel has an interest in upholding the integrity of the entire wage determination process as set forth in the 1981 Agreement and that because the instant case threatens the validity of the salary/benefit survey, the Panel must be a party in order to defend the 1981 Agreement.

The plaintiffs argue that the Panel should not be joined under Rule 19(a). The plaintiffs assert that the relief they request would affect only the putative plaintiff class for it would require the alteration of wage rates only for the SB category of employees. Any such change, the plaintiffs state, would not affect the overall agreement as negotiated between the Panel and TVA. The plaintiffs maintain that complete relief can be afforded among those already parties and that no prejudice to the Panel or anyone else will result if the Panel is not made a party. Finally, the plaintiffs maintain that the instant suit seeks to eradicate sex discrimination, not to abrogate the 1981 Agreement. Therefore, the plaintiffs assert that a decision from this Court will focus upon whether the effect the 1981 salary/benefit survey is discriminatory in relation to the SB employees, and not whether the 1981 Agreement itself is valid. In so defining the parameters of their lawsuit as a sex discrimination suit, the plaintiffs maintain that the Panel is not a required party under Rule 19(a).

Wright and Miller address the problem of union joinder under Rule 19(a) in the following manner:

> The union may be found to be a person to be joined if feasible under Rule 19(a) in an action brought by an employee against his employer requiring an adjudication that might have a significant impact on the collective bargaining agreement because of the union's interest in the operation of the contract.

C. Wright & A. Miller, *Federal Practice & Procedure* § 1620 (App.1983). Whether adjudication of the instant dispute will impact significantly upon the 1981 Agreement is a question to be viewed under the unique facts of this suit. TVA negotiated and signed the 1981 Agreement with a panel consisting of five union organizations each representing various groups of TVA employees. The interest of the Panel is to uphold the integrity of the 1981 Agreement. Yet, each individual union would have interests relating to its own membership. The putative class members are those TVA employees on the SB salary level all of whom are represented by OPEIU. The relief sought in this case is an alteration of a salary/benefit survey as it applies to the determination of the SB salary level—a concern uniquely directed at the OPEIU. The plaintiffs seek such relief to eradicate alleged sex discrimination, not to disrupt the operation of the 1981 Agreement. Furthermore, none of the non-party members of the Panel have raised objections to not being included in the instant suit; this absence of protest suggests to this Court a lack of any perceived interest-at-stake in this lawsuit for the non-party members of the Panel. *Cf. Grogg v. General Motors,* 72 F.R.D. at 532–33. The present adjudication will impact upon only one section of the 1981 Agreement—the SB salary level rates. *Cf. Lynch v. Sperry Rand Corp.,* 62 F.R.D. at 86 (the claimed relief required substantial revision of the collective bargaining agreement and the employer's pension plan, a change that affected all the employer's employees not just an insulated group of employees.) The

only union interested in the operation of that part of the contract is the OPEIU which already is party to this suit. It cannot be overemphasized that the present action is a sex discrimination suit. This Court can afford the individual plaintiffs complete relief by ordering back pay and alteration of the SB schedule. The Sixth Circuit Court of Appeals has stated that "Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Smith v. United Brotherhood of Carpenters*, 685 F.2d 164, 166 (6th Cir. 1982). This Court sees the instant case as one in which meaningful relief can be afforded among those presently before the Court. Furthermore, the Court finds that no interest of any non-party union members of the Panel would be prejudiced as a result of eradicating sex discrimination among the SB employees. The Court is not persuaded by the "ripple-effect" argument presented by the defendants whereby they allege that any alteration of one pay level schedule would necessarily mean that all other pay schedules would be affected. Such an argument seems more appropriate for subsequent contract renegotiation, and should not create a bar for relief to those allegedly suffering from the effects of sex discrimination. Thus, the Court holds that the Panel is not a party to be joined if feasible because the Court does not need the Panel before it in order to afford the plaintiffs complete relief, nor does the Panel have an interest to be prejudiced if the plaintiffs succeed in the alteration of a salary/benefit survey which affects only the putative plaintiff class and not the members of the non-party unions. Rule 19(a), Fed.R.Civ.P. The Court also bases its ruling on the practical consideration that joinder of the Panel would unnecessarily complicate the otherwise narrowly defined purpose behind this suit—that of eradicating sex discrimination. Thus, neither the nonparty unions, nor the Panel are indispensable parties under Rule 19. *See Ostapowicz v. Johnson Bronze Company,*

369 F.Supp. 522, 531–32 (W.D.Pa.1973). If subsequent events illustrate to this Court that the plaintiffs plan to expand the purpose of this suit to attack portions of the 1981 Agreement that will have significant impact upon the rights and obligations of the Panel or the non-party unions and their members, then this Court either will reconsider its ruling that the Panel need not be joined as a party under Rule 19(a), *see Karen v. Nabisco, Inc.*, 78 F.R.D. 388, 402 (W.D.Pa.1978), or consider whether to permit intervention of the Panel under Rule 24 Fed.R.Civ.P. *See Eldridge v. Carpenters #46*, 662 F.2d 534, 537–38 (9th Cir.1981); *Karen v. Nabisco, Inc.*, 78 F.R.D. at 403.

### Res Judicata/Collateral Estoppel

The final issue raised by the defendants is that the instant action is barred under res judicata/collateral estoppel principles. The defendants base this claim upon two cases in which the OPEIU was involved with challenges of the 1981 Agreement. Since the 1981 Agreement was upheld in both instances, the defendants maintain that subsequent challenges to the agreement are controlled by these cases. The plaintiffs, on the other hand, assert that the cases referred to by the defendants did not arise from allegations of sex discrimination, and therefore res judicata/collateral estoppel would not bar a Title VII suit against TVA under the 1981 Agreement.

The first of the two cases is *Salary Policy Employee Panel v. Tennessee Valley Authority*, Civ. Action No. 1–81–49 (E.D.Tenn. filed Feb. 24, 1981) (*Panel*). In that case the Panel, of which OPEIU was a member, sought to enjoin the taking of the annual salary/benefit survey because of TVA's refusal to include certain area employers in that survey. TVA argued that under the grievance procedures established by the labor agreement between the Panel and TVA, the dispute belonged before the arbitrator. The court agreed with TVA and therefore denied the Panel's request for preliminary injunction. The court stated that absent extreme circumstances, preliminary injunctions should not issue while

arbitration was pending on a matter, otherwise, the preliminary injunction might prejudice the process of arbitration. "The controlling consideration that governs the issue of whether the Court should grant the injunctive relief requested is whether an injunction is necessary to preserve the arbitrator's power to effect the award that the plaintiff has requested of him." *Id.* slip op. at 5–6. The court held that the injunctive relief was not necessary to preserve the power of the arbitrator and denied the motion to enjoin the taking of the annual salary/benefit survey.

The second of the two cases is *Public Safety Service Employees Union v. Tennessee Valley Authority,* Civ. Action No. 1–81–509 (E.D.Tenn. filed May 2, 1983) (*PSSEU*). The *PSSEU* case was an attempt by that particular union to invalidate the 1981 Agreement because of circumstances surrounding the acceptance of the 1981 Agreement by the Panel. PSSEU, a union member of the Panel which represented guards, public safety personnel, etc., employed by TVA, alleged that it had not consented to support the 1981 Agreement and that the final acceptance by the Panel's secretary was not binding as to PSSEU and its members. The defendants in that case, which included the OPEIU, argued that the 1981 Agreement was valid. Because PSSEU failed to state its objection to the acceptance of the agreement, the defendants argued that the union was estopped to object at a later time as to the validity of the 1981 Agreement. The district court in the *PSSEU* case was persuaded by the defendants' arguments and held that as a result of PSSEU's silence when the 1981 Agreement was finalized and accepted, the union was estopped from attacking the validity of the agreement.

■ The doctrine of res judicata holds that once a final judgment is rendered, further claims by the parties are barred if based on the same cause of action. *Ray v. Tennessee Valley Authority,* 677 F.2d 818, 821 (11th Cir.1982).

For a prior judgment to bar a subsequent action, it is firmly established (1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits.

*Id.* quoting *Stevenson v. International Paper Co.,* 516 F.2d 103, 108 (5th Cir.1975). The instant parties do not dispute the first element of proper jurisdiction in relation to the *Panel* and *PSSEU* cases. Dispute does exist between the parties in relation to the second and third elements of the above-quoted standard. Yet, while the Court does not belittle the honesty of the dispute concerning "final judgment" and "identity of parties," it feels that the crucial and dispositive determination for application of collateral estoppel principles is whether the *Panel* and/or *PSSEU* cases arise from the same cause of action as does the instant suit.

■ "The principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case." *Ray v. TVA,* 677 F.2d at 821. The instant action alleges sex discrimination with the primary right being that of the SB employees to be free of the allegedly discriminatory wage rates of the 1981 Agreement. With regard to the previous two cases, the *Panel* decision addressed the right of a union to obtain injunctive relief as to a matter that properly belonged before the arbitrator; the *PSSEU* case focused on the apparent right of the Panel's secretary to bind all non-objecting unions to the 1981 Agreement with TVA. The defendants adamantly argue that the instant case is an attack upon the operation of the salary/benefit survey (even as the *Panel* case was) which the OPEIU itself helped to negotiate. The plaintiffs counter by stating their purpose is not to materially change the salary/benefit survey in order to re-do that which the Panel attempted to do in the *Panel* case, but rather the purpose is to alter the survey in order to ensure that it does not

discriminate against the female members of the OPEIU. *See Thompson v. Board of Education of Romeo Community Schools,* 71 F.R.D. 398, 406 (W.D.Mich.1976) (union that compromised in contract negotiations is nonetheless able to bring suit to enforce members' statutory or constitutional rights). The defendants maintain that the present lawsuit attacks the underlying validity of the 1981 Agreement which has already been held valid and binding upon the union constituents in the *PSSEU* case. The plaintiffs assert, however, that the instant case has as its purpose the eradication of sex discrimination, not the invalidation of the 1981 Agreement. Upon review of the arguments the Court is persuaded that the cause of action presented in the instant case is not the same as was involved in either the *Panel* or *PSSEU* decision.

■ Likewise, res judicata applies to bar a Title VII claim only if the previous adjudication offered a full and fair opportunity to be heard on the discrimination claim. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 465, 102 S.Ct. 1883, 1888, 72 L.Ed.2d 262, 283 (1982). It can hardly be said that in the context of a dispute over whether to enjoin the taking of a survey (*Panel* case), or in the context of a dispute concerning whether a panel secretary can bind silent panel members to an agreement (*PSSEU* case), a fair opportunity to raise sex discrimination claims has been afforded the instant plaintiffs. The *Kremer* case also states that res judicata precludes parties (and their privies) from litigating issues that could have been raised in earlier proceedings. *Id.* The Court views this part of the *Kremer* decision as inapplicable to the instant discrimination suit because both the *Panel* and the *PSSEU* cases were decided in absence of specific facts relating to the alleged discriminatory effect of the salary/benefit survey.[5] Accordingly, the Court finds the instant case not to be barred by res judicata principles.

Having reviewed the arguments presented by the defendants concerning collateral estoppel, this Court is not persuaded that any issue presented in the instant lawsuit is precluded due to the *Panel* or *PSSEU* case.

■ The defendants' final attempt to bar the plaintiffs sex discrimination suit falls under the doctrine of judicial estoppel. *See generally* 1B J. Moore, *Moore's Federal Practice,* ¶ 0.405[8], at 240 (2d ed. 1983). In essence, the defendants claim that the plaintiffs have changed sides of the argument by defending the 1981 Agreement in the *PSSEU* case while allegedly attacking the same agreement in the instant case. Such behavior, if true, could be disallowed under judicial estoppel. The Court rejects this argument for the reasons discussed earlier that in the instant case the plaintiffs seek not to attack the validity of the 1981 Agreement, but rather seek to eradicate the discriminatory effects allegedly created by certain portions of that agreement. For the reasons stated, the Court finds that res judicata/collateral-judicial estoppel principles do not bar the present plaintiffs from bringing their sex discrimination suit before this Court.

The defendants' motion to dismiss or in the alternative for summary judgment is denied.

---

5. The Court is aware of the two instances during the arbitration resulting from the *Panel* decision in which the arbitrator made passing reference of OPEIU's concern for its women and black members. The Court does not find, however, that the OPEIU's urging of the arbitrator to consider the needs of these minority employees should have prompted the OPEIU's to raise unripe discrimination claims at a time when it was uncertain whether the salary/benefit survey would result in any type of discrimination.