**RAINEY BROTHERS CONSTRUCTION COMPANY, INCORPORATED,**
Plaintiff,

v.

**MEMPHIS AND SHELBY COUNTY BOARD OF ADJUSTMENT, et al., Defendants.**

No. 96–3156 M1/V.

United States District Court,
W.D. Tennessee,
Western Division.

June 18, 1997.

Jack McNeil, McNeil Law Office, Memphis, TN, Robert H. Freilich, Stephen J. Moore, Freilich Leitner & Carlisle, Kansas City, MO, for Plaintiff.

Fred E. Jones, Jr., Shuttleworth Wilkinson & Wilson, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

McCALLA, District Judge.

This matter is before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment, filed November 25, 1996. Because the defendants have submitted and the Court has considered matters outside of the pleadings, the Court will treat defendants' motion as a motion for summary judgment.[1] See Fed.R.Civ.P. 12(b). For the reasons set forth below, defendant's motion is GRANTED.

---

1. In its memorandum in opposition to defendants' motion, plaintiff argues, *inter alia*, that Exhibits A through O attached to defendants' motion may not be considered by this Court in resolving defendants' motion because such materials are outside the scope of materials allowed under Fed.R.Civ.P. 56 and Local Rule 11(d)(2). Rule 56(a) provides that only affidavits, pleadings, depositions, or answers to interrogatories may be considered and relied upon by a court in considering a motion for summary judgment. Fed.R.Civ.P. 56(a). According to plaintiff, "even if [defendants' exhibits] were past orders and pleadings, they are not verified and are not self-authenticating." This issue was raised by the Court at a hearing held on January 21, 1997, at which plaintiff stipulated to the authenticity of the documents. Accordingly, this issue is now moot.

**1000**

## BACKGROUND

This case is the culmination of a long standing land dispute between plaintiff, Rainey Brothers Construction Company, Inc., and defendants, the Memphis and Shelby County Board of Adjustment (the "Board") and the City of Memphis (the "City"). The property in question is a fourteen (14) acre tract of land located at the intersection of Helene and Vera Cruz streets, known as 5261 Helene, in Memphis, Shelby County, Tennessee. The property is bounded on the south by Interstate I–240, on the north by Helene Avenue and the East Memphis Catholic Club, on the west by an open concrete lined ditch, and on the east by residences that face away from the property.

On February 3, 1964, plaintiff presented a preliminary plan to develop single-family houses on the property to City officials but was told that the minimum building elevation had been increased. Because raising the minimum building elevation made it economically unfeasible to build single-family houses on the property, plaintiff then sought R–4 apartment zoning in order to construct 432 units of two (2) story apartments on the property. This request was rejected by the City's Planning Commission, and, on appeal, this decision was upheld by the City Commission.

Subsequently, the City Commission approved the property for R3A zoning, effective December 29, 1967, which would have allowed plaintiff to build 244 apartments on the property. Relying on this zoning change, plaintiff applied to the City Building Department for a building permit. The City's mayor, however, instructed the City's Building Department not to issue a building permit for the construction of the 244 apartments on the property. Consequently, on January 16, 1968, the City's Building Official notified plaintiff that the City would not issue a building permit to construct apartments on the property.

In response, plaintiff then requested that the Board grant it permission to construct 165 apartments on the property. The Board approved this request but required that the apartments be constructed at an elevation of 274.9 mean sea level ("msl"). Once again,

the Mayor expressed his opposition to the construction of the apartments, requesting that the Board reconsider its approval. This time, however, the Board reaffirmed its approval of the construction.

Then, relying on a decision of the Tennessee Supreme Court, *Glankler v. City of Memphis*, 481 S.W.2d 376, 378 (Tenn.1972) ("The Board of Adjustment of the City of Memphis is an administrative body which enjoys a wide latitude and great discretion in the granting of variances from the zoning regulations when it finds that such regulations impose unnecessary restraint or hardship. It is not an unlawful delegation of authority to confer on such a board jurisdiction to hear and determine appeals."), plaintiff requested that the Board grant a hardship variance to lower the minimum fill elevation from 274.9 msl to 270 msl. On August 29, 1975, the Board, acting in executive session, granted plaintiff's requests for a hardship variance and lowered the minimum fill elevation on the property from 274.9 msl to 270 msl; the Board, however, did not hold a public hearing or give notice to interested parties of plaintiff's request for a variance.

After obtaining the variance, plaintiff waited over sixty (60) days to see if any appeal or action challenging the variance would be filed, as provided in the City's Charter and applicable state statute. Because no appeal or other challenge was filed within the 60 day period, plaintiff began obtaining all necessary permits and contracting with various engineers, materialmen, suppliers, and plumbers in furtherance of construction. Plaintiff also obtained approvals from the City's Plumbing Department and revised its sewer plans. Inspections of the property were made by the City's Building Department. Slabs were then placed in position after receiving approval and financing. Construction was well into the framing stage by April 1976.

On April 7, 1976, some seven (7) months after the Board's August 29, 1975 action, an attorney representing certain objectors sent notice to the Board, complaining about the action. Subsequently, on April 28, 1976, the Board rescinded the August 29, 1975 action,

revoked the variance, and reinstated the original building elevation of 274.9 msl. All of this action was taken without any notice to plaintiff and without giving plaintiff any opportunity to appear or to be heard. According to plaintiff, the change in the minimum building elevation required that it tear down the construction already completed, fill the property to the minimum building elevation of 274.9 msl, and rebuild at significant expense. Plaintiff, however, did not take these steps.

Instead, plaintiff petitioned for a rehearing at the next meeting of the Board, scheduled for May 26, 1976. This request, however, was denied. Subsequently, on September 30, 1976, without any notice or any opportunity to be heard, the City's Building official canceled and revoked plaintiff's construction and other permits. Plaintiff contends that this constituted a final decision by the Board and the City.

On May 27, 1976, plaintiff simultaneously filed two (2) actions in state court. The first action, Case No. 53654 R.D.–8 (*"Rainey I"*), sought review of the Board's April 28, 1976 action via certiorari, in which plaintiff sought an injunction superseding the action of the Board and preventing the City's Building Department from enforcing the Board's decision. Plaintiff also prayed for "such other, further and general relief to which it may be entitled in the premises and as the proof may show to be necessary and the circumstances require." In essence, plaintiff argued that it had taken numerous steps, expended significant sums, and executed notes in reliance on the Board's August 27, 1975 action lowering the building elevation to 270 msl and that the Board's April 28, 1976 decision was illegal, ultra vires, without jurisdiction, arbitrary and capricious (and therefore a deprivation of substantive due process), and had caused Rainey Brothers great financial and economic harm.

The second action, Case No. 73473.–8 T.D. (*Rainey II*), sought money damages resulting from the Board's April 28, 1976 decision. As in *Rainey I*, plaintiff asserted that it had relied on the Board's decision to lower the building elevation to 270 msl and, as a result, had expended significant sums and had executed various notes. Moreover, plaintiff alleged that as a result of that decision, it was required to tear down the construction already completed, to fill the property to 274.9 msl, and rebuild at significant expense.

Incredibly, during the next 12 years, there was apparently no action taken in the cases. According to plaintiff, none of the defendants filed any responsive pleading or answer to either complaint during this time. At the same time, plaintiff never moved for entry of default or a default judgment. Finally, on November 14, 1988, plaintiff filed an amended complaint in each action. The amended complaints added specific claims for inverse condemnation under Tennessee state law, Tenn.Code Ann. § 29–16–123, a takings claim under the federal constitution, and substantive and procedural due process claims under the state and federal constitutions. In addition, the amount of damages sought was increased significantly. Subsequently, plaintiff sought leave to file a second amended complaint in each action. Leave to file was granted by the trial court, and, on March 8, 1989, plaintiff filed second amended complaints in each action.

On March 21, 1989, defendants moved to dismiss the second amended complaints on the grounds that the amended complaints contained new causes of action that were barred by the applicable Tennessee statutes of limitations because they did not relate back to the date of the original complaint. On August 2, 1989, the trial court dismissed the second amended complaint in each action pursuant to Tenn. R. Civ. P. 12.02(6), holding that these claims did not relate back under Tenn. R. Civ. P. 15.03 and were, therefore, barred by the applicable statutes of limitations. The trial court, however, did grant plaintiff's motion for leave to file an interlocutory appeal from each order of dismissal.

On interlocutory appeal, the Tennessee Court of Appeals affirmed the dismissals, finding that the second amended complaints raised several new claims and did not relate back to the date of the original pleading:

Given the fact that the defendants were not on notice from their original pleadings that they may have to defend these claims, the amendments do not relate back to the

original pleadings and given the fact that the amendments were filed over 12 years after the original pleadings, the defendants would be unfairly prejudiced if they were made to defend these new causes of action. *Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment,* 821 S.W.2d 938, 942 (Tenn.Ct.App.1991). Plaintiff's request for permission to appeal to the Tennessee Supreme Court was denied. Plaintiff's petition for a writ of certiorari to the United States Supreme Court was also denied.

On April 25, 1994, a non-jury trial began in the Circuit Court of Shelby County, Tennessee. On the first day of the trial, the City Attorney, representing the City and the Board, stipulated in open court that the Board and the City had acted arbitrarily, capriciously, and illegally when it restored the 274.9 msl building elevation without any notice to plaintiff and without providing any opportunity for plaintiff to be heard or object. In essence, defendants stipulated that they had violated plaintiff's rights under both the Tennessee and United States Constitutions.

On May 17, 1994, the trial court entered an order, holding that the City and the Board had violated plaintiff's constitutional rights, and, therefore, the April 28, 1976 decision of the Board was "void, capricious, arbitrary and illegal and therefore reversed." Despite this finding, the trial court found that plaintiff's money damage claim in *Rainey II* was "barred by the general immunity afforded to a municipality and specifically, by the language in Tenn.Code Ann. § 29–20–205."

On May 27, 1994, plaintiff filed a notice of appeal, in which it sought review of the dismissal of its damage claim. On April 7, 1995, because plaintiff had not filed a transcript in accordance with Tenn. R.App. P. 24(b),[2] the Tennessee Court of Appeals filed an order to show cause why the appeal should not be dismissed for failure to comply with the Tennessee Rules of Appellate Procedure. On April 18, 1995, the Tennessee Court of Appeals dismissed the appeal, finding that plaintiff had not shown good cause for its

failure to file the transcript. *See H.D. Edgemon Contracting Co. v. King,* 803 S.W.2d 220, 223 (Tenn.1991) (holding that "the 90-day requirement set forth in Rule 24 is reasonable and fair and in the absence of 'good cause' being shown, the rule must be enforced").

On September 11, 1995, the Tennessee Supreme Court denied plaintiff's application for permission to appeal. Plaintiff then moved for reconsideration, and, on November 6, 1995, the Tennessee Supreme Court denied that motion as well.

On November 5, 1996, plaintiff filed an action under 42 U.S.C. § 1983 in this Court, seeking to assert a substantive due process claim, a procedural due process claim, and an inverse condemnation or takings claim. On November 25, 1996, defendants responded to the complaint by filing a motion to dismiss or, in the alternative, for summary judgment on the grounds that plaintiff's claims were barred by the doctrine of res judicata. On December 27, 1996, plaintiff filed a response, and, on February 4, 1997, the Court heard argument on defendant's motion.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Pursuant to Rule 56(e), when confronted with a properly supported motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

---

**2.** Rule 24(b) provides that "the transcript ... shall be filed with the clerk of the trial court within 90 days after filing the notice of appeal." Tenn. R.App. P. 24(b).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

## DISCUSSION

■ Defendants move for summary judgment on the grounds that the claims raised by plaintiff in its complaint have been previously decided against them in state court and are, therefore, res judicata between the parties. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); *accord Migra v. Warren City Sch. Dist. Bd.,* 465 U.S. 75, 83–84, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984) (holding that, even in an action brought under § 1983, a federal court must give preclusive effect to issues that were actually litigated or could have been litigated in a prior state court proceeding). A federal court can refuse to accord preclusive effect to a state court judgment, however, if application of the state preclusion law would violate due process. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."). Due process is violated if a litigant did not have a full and fair opportunity to litigate his claims. *Id.* at 480–81, 102 S.Ct. at 1896–97.

■ Under Tennessee law, a previous action is given preclusive res judicata effect if: (1) the underlying judgment was rendered by a court of competent jurisdiction; (2) the

same parties were involved in both suits; (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. *Lee v. Hall,* 790 S.W.2d 293, 294 (Tenn.Ct.App.1990); *Hutcheson v. Tennessee Valley Auth.* 604 F.Supp. 543, 550 (M.D.Tenn.1985); 22 Tenn. Juris. Res Judicata §§ 8–11 (1985). Applying these standards to the instant case, there is no real dispute that the traditional elements of res judicata have been established.

■ Specifically, it is beyond dispute that the Tennessee state courts have jurisdiction to hear federal statutory and constitutional claims. Nor is there any dispute that the same parties involved in this case were also parties to the state court action. Likewise, there is no question that plaintiff seeks to assert in this case the exact claims that were previously raised and dismissed by the state courts pursuant to Tenn. R. Civ. P. 12.02(6). Finally, it is well settled that an order of dismissal granted pursuant to Tenn. R. Civ. P. 12.02(6) is a decision on the merits of the case. *Dyer v. Intera Corp.,* 870 F.2d 1063, 1066 (6th Cir.1989) ("Tennessee Rule of Civil Procedure 12.02(6) is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.... In the federal courts, a dismissal pursuant to Rule 12(b)(6) is considered a decision on the merits with full res judicata effect.") (citations omitted). Accordingly, defendants are presumptively entitled to dismissal of this action on res judicata grounds.

### A.

■ Plaintiff, however, seeks to avoid the application of res judicata on essentially three grounds. First, plaintiff argues, citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), that res judicata is inapplicable because its federal claims were not ripe until the state courts ruled on its claims. In *Williamson County,* the Supreme Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Federal] Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at 3121. This rule rests on the fact

that the United States Constitution does not prohibit takings per se, only takings without just compensation.[3]

Although plaintiff correctly states the principle of *Williamson County,* plaintiff improperly concludes that res judicata is inapplicable in such cases. On the contrary, as the Supreme Court has noted,

> There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state court proceeding in which he would rather not have engaged at all.

*Allen v. McCurry,* 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980). Indeed, at least two Courts of Appeals have rejected plaintiff's exact argument and have found that the interaction between *Williamson*

*County* and the Full Faith and Credit Act requires that a plaintiff landowner assert his federal claims in the state courts. For example, in *Peduto v. City of North Wildwood,* 878 F.2d 725 (3d Cir.1989), the Third Circuit held:

> Appellants have exhausted their state claims, which, under *Williamson,* is a necessary predicate to their federal cause of action; but in doing so, they received a full and fair adjudication of their constitutional claims against the City in state court. Due process guarantees them no less, but entitles them to no more.

*Id.* at 729; *accord Palomar Mobilehome Park v. City of San Marcos,* 989 F.2d 362, 364–65 (9th Cir.1993) (citing *Peduto* ).[4] This Court agrees with the reasoning of *Peduto* and *Palomar* and, therefore, finds plaintiff's argument unpersuasive.[5]

**3.** In *Bigelow v. Michigan Department of Natural Resources,* 970 F.2d 154, 159–60 (6th Cir.1992), the Sixth Circuit extended this ripeness doctrine to include procedural due process claims that arise from and are ancillary to the alleged taking. *See Hoehne v. San Benito County,* 870 F.2d 529, 532 (9th Cir.1989) (stating that "the final decision requirement is applicable to substantive due process and equal protection claims brought to challenge the application of land use regulations, and is most likely applicable to related due process claims"); *Harris v. Riverside County,* 904 F.2d 497, 500 (9th Cir.1990) (stating that "[p]rocedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case"). The court reasoned that "addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint." *Bigelow,* 970 F.2d at 160.

**4.** The Court does note, however, that the Ninth Circuit has partially retreated from its holding in *Palomar.* In *Dodd v. Hood River County,* 59 F.3d 852 (9th Cir.1995), the Ninth Circuit held: "We disagree.. with the suggestion that *Williamson County* is a thinly-veiled attempt by the [Supreme] Court to eliminate the federal forum for Fifth Amendment taking plaintiffs and that any federal remedy is limited to actions based on inadequate taking procedures in the state." *Id.* at 861. The court, however, did not overrule the res judicata principles set forth in *Palomar.* In particular, the Court notes that the *Dodd* court did not hold, as plaintiff suggests, that res judicata does not apply in cases where a plaintiff is

required by *Williamson County* to litigate its claims in state court. Instead, it merely held that res judicata did not apply under the facts of that case, finding that the state and county had tacitly consented to the splitting of the claims and that the Oregon court had expressly reserved the federal constitutional issue for a later determination and, therefore, had not been fully adjudicated. *Dodd,* 59 F.3d at 862.

After reviewing *Dodd* and the facts of this case, this Court finds that it is not confronted with the same factual circumstances. Specifically, there was no agreement between the parties that plaintiff could split its claims and there was no express reservation by the Tennessee courts of plaintiff's claims for a later determination. Instead, the Tennessee courts specifically addressed plaintiff's claims but found that they did not relate back under Tenn. R. Civ. P. 15.03 and were, therefore, barred by the applicable statutes of limitations. Accordingly, the court dismissed those claims under Tenn. R. Civ. P. 12.02(6). In light of these differences, the Court finds that it need not address the issues raised in *Dodd.*

**5.** In *Fields v. Sarasota Manatee Airport Authority,* 953 F.2d 1299 (11th Cir.1992), the Eleventh Circuit held that a plaintiff landowner can preserve his federal constitutional claims for federal court by making a reservation of rights in the state court proceeding. *See Jennings v. Caddo Parish Sch. Bd.,* 531 F.2d 1331, 1332 (5th Cir.1976) (holding that a party can "reserve her constitutional claims for subsequent litigation in federal court" by "making on the state record a reservation as to the disposition of the entire case by the state courts"). Because plaintiff made no such reservation of rights in this,case, however, the Court expressly declines to decide whether such a reservation would be effective in similar cases.

## B.

Alternatively, plaintiff argues that res judicata is inapplicable because plaintiff did not have a full and fair opportunity to litigate its federal claims in state court. *Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss* at 7 (citing *Kremer,* 456 U.S. at 481, 102 S.Ct. at 1897). According to plaintiff, the state courts' refusal to hear its federal claims on the grounds that plaintiff was precluded from amending its pleadings under Tenn. R. Civ. P. 15.03 deprived it of a hearing on the merits of its federal claims and, therefore, violated due process. In making this argument, plaintiff relies, in part, on the Eleventh Circuit's opinion in *Adams v. Sewell,* 946 F.2d 757 (11th Cir.1991), *overruled on other grounds by McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994) (en banc). Plaintiff's reliance on *Sewell,* however, is misplaced. In *Sewell,* the plaintiff sought back pay and reinstatement when he filed a *writ of mandamus* in state court. In a subsequent federal action, the defendants argued that the matter was res judicata between the parties because the plaintiff had sought back pay and restitution in his mandamus action. The Eleventh Circuit, however, held that the plaintiff's federal claims were not barred by res judicata because the plaintiff had failed to receive a "legitimate opportunity to litigate his section 1983 claims in state court." *Sewell,* 946 F.2d at 762. Specifically, the court held that there is no res judicata effect when the state court completely ignores federal claims raised in state court. *Id.*

Unlike the state court in *Sewell,* however, the Tennessee courts did not completely ignore the federal claims raised by plaintiff. Instead, as noted above, the state courts considered plaintiff's proposed federal claims but dismissed them pursuant to Tenn. R. Civ. P. 12.02(6) on the grounds that they did not relate back under Tenn. R. Civ. P. 15.03 and were, therefore, barred by the applicable statutes of limitations. As further noted

above, a dismissal pursuant to Tenn. R. Civ. P. 12.02(6) is a decision on the merits for res judicata purposes. *Dyer,* 870 F.2d at 1066. Thus, plaintiff's reliance on *Sewell* is misplaced.

In essence, the crux of plaintiff's argument is that it was denied due process because the decision of the Tennessee courts to dismiss its federal claims was erroneous. In reality, therefore, plaintiff seeks to have this Court review the validity of the state court's decision. The Court, however, declines this invitation on a number of grounds.

 First, it is well settled that res judicata is based on the public policy favoring finality in litigation and does not depend on the validity of the underlying judgment. See *Turnbow v. Pacific Mut. Life Ins. Co.,* 934 F.2d 1100, 1103 (9th Cir.1991). Second, it is even more settled that the "federal district courts have no authority to review final judgments of a state court even when federal constitutional principles are involved." *Palomar,* 989 F.2d at 365 (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 484–85, 103 S.Ct. 1303, 1316, 75 L.Ed.2d 206 (1983)). Thus, even assuming that plaintiff is correct and the state courts were bound to follow the federal relation back doctrine with respect to its federal claims and that the state courts applied it incorrectly, this Court may not review that decision. Instead, the proper federal forum, if any, for review of the state court's judgment is the United States Supreme Court. *Id.*

 Furthermore, the Court notes that this is not a case where the state has employed a procedural rule to thwart federal rights in a systemic fashion. See *McCurry,* 449 U.S. at 100–01, 101 S.Ct. at 417–18. Indeed, as plaintiff argues, the state courts were simply wrong in their holding that plaintiff could not amend its pleadings to assert its federal claims.[6] That the state

---

6. Pursuant to Tenn. R. Civ. P. 15.03, only those claims that relate back to the original pleadings are saved from the effects of the applicable statute of limitations. Under Tennessee law, a claim relates back if it arises from the same conduct, transaction, or occurrence as set forth in the original pleadings. *Karash v. Pigott,* 530 S.W.2d

775 (Tenn.1975). In affirming the Circuit Court's decision to dismiss, however, the Tennessee Court of Appeals held that "the Tennessee Supreme Court has determined that notice is the critical element involved in determining whether the amendments to pleadings relate back." *Rainey Bros. Constr. Co.. Inc. v. Memphis & Shelby*

courts were wrong, however, does empower this Court to review such a decision. To hold otherwise would require the federal district courts to review all state court decisions that dismissed any federal claims on a procedural ground. For obvious reasons, the Court declines plaintiff's invitation to transform the federal district courts into state appellate courts. *Palomar*, 989 F.2d at 366.

### C.

Finally, plaintiff seeks to challenge the state court proceedings on the grounds that even though "the state court found a constitutional violation, it erroneously and in violation of federal and state law refused to grant any monetary relief when it held that Rainey Bros.' damage claim was barred by the general immunity afforded to a municipality by [Tenn.Code Ann. § 29–20–205.]" *Pl.'s Mem.* at 10. Although the Court agrees with plaintiff that this decision was erroneous, *see McKenna v. City of Memphis*, 544 F.Supp. 415, 419 (W.D.Tenn.1982) (holding that the Tennessee Governmental Tort Liability Act does not apply to inverse condemnation claims or due process claims arising under 42 U.S.C. § 1983), *aff'd* 785 F.2d 560 (6th Cir.1986), that decision is not reviewable by this Court for the same reasons set forth above. Moreover, even if this Court could review this decision under certain circumstances, the Court would decline to do so under the circumstances of this case. As noted above, plaintiff's state appeal from the Circuit Court's decision to dismiss its damage claim was dismissed on the grounds that plaintiff had failed to file the transcript with the court pursuant to Tenn. R.App. P.

---

*County Bd. of Adjustment*, 821 S.W.2d 938, 942 (Tenn.Ct.App.1991) (citing *Floyd v. Rentrop*, 675 S.W.2d 165, 168 (Tenn.1984)). A review of *Floyd*, however, reveals that the plaintiff in that case sought to add a party to the action and not legal claims as here. In cases where the plaintiff seeks to add a party, notice is indeed a critical element under Tennessee law. In cases where the plaintiff seeks to add legal claims, however, it is well settled that notice is not a required element. *E.g., Karash*, 530 S.W.2d 775; *Branch v. Warren*, 527 S.W.2d 89, 91 (Tenn.1975); *Walden v. Wylie*, 645 S.W.2d 247 (Tenn.Ct.App.1982).

7. Defendants seek to extend this rationale to the entire case. As plaintiff correctly notes, however, the dismissal of its proposed federal claims

24(a). In essence, therefore, plaintiff has procedurally defaulted whatever argument it may have had to assert a claim in this Court.[7]

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED, and this case is DISMISSED.

---

was the subject of an interlocutory appeal. Accordingly, under Tennessee law, that issue became the law of the case once that interlocutory appeal process was exhausted, and plaintiff could not have reargued those issues in its subsequent appeal from the final dismissal. *See Clements v. Pearson*, 209 Tenn. 223, 352 S.W.2d 236, 237 (1961) ("A ruling or decision once made in a particular case by an appellate court, while it may be overruled in other cases, is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.").